1  FREDERICK M. RARICK, ESQ.
2  BAR NO.: 111152
   Lawjet@aol.com
3  2938 Rounsevel Terrace
   Laguna Beach CA 92651
4  Tel: (585) 219-4900
5  Fax: (585) 219-4905
6  Attorney for Plaintiff
7
                          E-filing
8
9             UNITED STATES DISTRICT COURT
10       FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
12  SENSIBLE FOODS, LLC                    )   Case No.: cv 11 2819
                                           )
13              Plaintiff,                 )   COMPLAINT FOR BREACH OF CONTRACT,
                                           )   BREACH OF IMPLIED CONTRACT, BREACH
14  vs.                                    )   OF IMPLIED COVENANT OF GOOD FAITH AND
                                           )   FAIR DEALING, STATE TRADEMARK
15                                         )   INFRINGEMENT, CONTRIBUTORY
16  WORLD GOURMET, INC., HAIN              )   INFRINGEMENT, STATE LAW UNFAIR
    GOURMET, INC., HAIN                    )   COMPETITION & DECEPTIVE TRADE PRACTICES,
17  CELESTIAL GROUP, INC., WORLD           )   STATE LAW FALSE ADVERTISING, FEDERAL
    GOURMET MARKETING, LLC,                )   TRADEMARK INFRINGEMENT, REVERSE
18  SENSIBLE SNACKS, INC, AND              )   CONFUSION, CANCELLATION OF FEDERAL
19  DOES 1-20, inclusive.                  )   TRADEMARK REGISTRATION, FEDERAL CYBER-
                                           )   PIRACY, FEDERAL FALSE ADVERTISING,
20              Defendants.                )   MISREPRESENTATION & UNFAIR
                                           )   COMPETITION, STATE CYBER-PIRACY, COMMON
21                                         )   LAW TRADEMARK INFRINGEMENT AND
22                                         )   UNJUST ENRICHMENT
                                           )
23                                         )
                                           )   (DEMAND FOR JURY TRIAL)
24                                         )
25  _____)
26
        Plaintiff, Sensible Foods, LLC, a California Limited Liability Company, alleges against
27
    Defendants, and each of them, World Gourmet, Inc., World Gourmet Marketing, LLC; The Hain-
28

Celestial Group, Inc., Hain Gourmet, Inc., and Sensible Snacks, Inc. and Does 1-20 inclusive as

follows:

NATURE OF ACTION

1.  Plaintiff, Sensible Foods, LLC, is a California Limited Liability Company and is engaged in the

    development and the sale of a wide range of established products consisting of a full line of

    organic, healthy and natural dried fruit and vegetable snacks and related goods, sold worldwide.

2.  Plaintiff brings this action to 1) obtain relief from Defendants' breach of contract of a

    confidentiality agreement; 2) enjoin the Defendants's a) knowing and willful infringement of

    Plaintiff's trademarks some of which are incontestable, b) attempt to trade on and usurp

    Plaintiff's accumulated goodwill and c) conduct that confuses (directly or in reverse) the public in

    their purchases or otherwise causes the public to mistake their purchases; deceives the public as to

    the source of their purchases or asserts a false sponsorship of or affiliation with the Plaintiff's or

    their products. Based on Defendant's sworn declaration in its applications to the United States

    Patent and Trademark Office ("PTO"), Defendant is selling in U.S Commerce, among other items

    listed in its PTO applications, soy-based food bars; soy-based snack foods; potato-based snack

    foods; soy chips; soy nuts; vegetable chips; vegetable-based snack foods; pellet snacks, namely,

    hot air expanded pellet snacks consisting primarily of soy, potato or vegetables and IC 030. US

    046: corn chips; corn-based snack foods; tortilla chips; grain-based snack foods; rice-based snack

    foods; pellet snacks, namely, hot air expanded pellet snacks consisting primarily of grains; puffed

    corn snacks; cheese flavored snacks, namely, cheese curls; cheese flavored puffed corn snacks,

    hereinafter referred to as the "Infringing Products".  Defendants sell the Infringing Products,

    which are the same as or similar to many products sold under the Plaintiff's trademarks, using a

---

combination of words, terms, designs, logos, fonts, wording, trade names, descriptions,

trademarks and other expressive means on its packaging and trade dress, as well as in public

advertising and other forms of written, visual, design and business and trade communications;

hereinafter referred to as the "Infringing Works" in a manner confusingly similar to and in some

instances identical to that used by Plaintiff. Defendants' conduct is without Plaintiff's

authorization and has been in bad faith and with full knowledge and awareness of Plaintiff's

rights in its trademarks. Defendants adopted and use their Infringing Works in a manner which is

either in identical form or such near resemblance and strikingly similarity to the Plaintiff's

trademarks as to cause confusion, reverse confusion, or mistake and or to deceive the public.

Defendants' use of the Infringing Works, presented in a manner virtually identical to, or at a

minimum, confusingly similar to those used by Plaintiff and has inevitably led to confusion and

or reverse confusion and constitutes a willful and blatant disregard and violation of Plaintiff's

rights under applicable trademark, unfair competition, false advertising and cyberpiracy laws.

3. To protect its rights and enjoin Defendants from further harmful conduct, the Plaintiff brings this

action for Breach of Contract, Breach of Implied Contract, Breach of the Implied Covenant of

Good Faith and Fair Dealing, State Trademark Infringement in violation of Ca. Bus. & Prof. Code

§§14200 et seq., unfair competition in violation of Ca. Bus. & Prof. Code §§ 17200 et seq.;

deceptive trade practices in violation of Ca. Bus. & Prof. Code §§ 17500 et seq.,  state law false

advertising in violation of Ca. Bus. & Prof. Code §§ 17500 et seq., trademark infringement in

violation of Sections 32 and 43 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§

1051 et. seq.; reverse confusion in violation of the Lanham Act, 15 U.S.C §1114, false

designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. §1125 (a)

COMPLAINT FOR DAMAGES

et. seq., cancellation of the Infringing Marks under the Lanham Act §§ 1064 (1), (3), 1119, cyberpiracy in violation of the Lanham Act 15. U.S.C §1025 (d) et. seq. and Ca. Bus. & Prof. Code §§ 17525 et seq. , false advertising, misrepresentation and unfair competition in violation of the Lanham Act 15. U.S.C §1125 (a) et seq, common law trademark infringement and unjust enrichment.  The Plaintiff seeks, inter alia, preliminary and permanent injunctive relief, as well as full restitution, compensatory, consequential, punitive damages and/or extraordinary remedies under 15 U.S.C. § 1117, an account of profits, and disgorgement of all profits and revenues obtained as a result of Defendants' unlawful and deliberate conduct.

## PARTIES

4. Plaintiff, Sensible Foods, LLC, is a California Limited Liability Company, ("Sensible Foods") and is and was at all times relevant herein a limited liability company duly organized and existing under the laws of the State of California with its principal place of business located in Sonoma County, California.

5. Plaintiff is informed and believes and based upon such information and belief alleges that Defendant, The Hain Celestial Group, Inc., (hereinafter referred to as "Hain C"), is and was at all times relevant herein a Delaware Corporation having its principal place of business located at 58 South Service Road, Suite 250, Melville, New York, 11747.

6. Plaintiff is informed and believes and based upon such information and belief alleges that Defendant, World Gourmet Marketing, LLC, (hereinafter, "WGM") is and was at all relevant times herein a limited liability company with its principle place of business located at 49 Lincoln Road, Butler, New Jersey, 07405, United States, organized in New Jersey.

COMPLAINT FOR DAMAGES

7.  Plaintiff is informed and believes and based upon such information and belief alleges that Defendant, World Gourmet, Inc., (hereinafter, "WG") is and was at all times relevant herein a New Jersey Corporation with its principle place of business located at 49 Lincoln Road, Butler, New Jersey, 07405, United States, organized in New Jersey.

8.  Plaintiff is informed and believes and based upon such information and belief alleges that on June 15, 2010 the Defendant Hain C stated in a press release: "MELVILLE, N.Y., June 15, 2010 / PRNewswire via COMTEX/ --The Hain Celestial Group, Inc. (Nasdaq: HAIN), a leading natural and organic products company providing consumers with A Healthy Way of Life(TM), today announced the acquisition of the assets and business of World Gourmet Marketing, L.L.C., including its Sensible Portions(R) brand of Garden Veggie Straws(TM), Pita Bites(R) and other snack products."

9.  Plaintiff is informed and believes and based upon such information and belief alleges the Defendant, Hain Gourmet, Inc., (hereinafter "Hain G"), is and was at all times relevant herein a Delaware Corporation having is principal place of business located at 58 South Service Road, Suite 250, Melville, New York, 11747.

10. Plaintiff is informed and believes and based upon such information and belief alleges that the Defendant, Sensible Snacks, Inc., (hereinafter "Sensible Snacks "), is and was at all times relevant times herein, a New Jersey Corporation having is principal place of business located at 2870 Yellow Goose Road, Lancaster, PA, 17601-1814.

11. Plaintiff is informed and believes and based upon such information and belief alleges that Defendants, and each of them, contract with and induce others; namely one or more Does, to among other activities, manufacture, package, store, promote and ship Defendants', Hain C, Hain

COMPLAINT FOR DAMAGES

G, and or WGM, Infringing Products using Infringing Works from which activities the Defendants profit.

12. Plaintiff is informed and believes and based upon such information and belief alleges that at all times relevant herein, the Defendants acted as individuals or actual and/or ostensible partners, joint venturers, agents, officers, employees, servants or representatives of each other and that each acted, individually or collectively, within the scope of his or its partnership, joint venture, agency, employment or representation as to the acts alleged herein. Plaintiff further alleges, on information and belief, that in doing the acts alleged herein, each and every one of the defendants and each defendant's designated agents, employees, servants, contractors, independent or representatives were acting within the scope of their authority and with the permission, consent knowledge and or ratification of each of the other defendants so as to be jointly and severally liable for said acts.

13. Plaintiff is not aware of the true names, capacities of the defendants sued herein under the names "Does 1 through 20" inclusive, and therefore refers to said parties by such fictitious names. Plaintiff is informed and believes that each of the named Defendants was in some manner responsible for Plaintiff's damages, whether as an individual or agent, contractor, independent contractor, employee, partner, joint venturer, assignee, successor, subsidiary, parent company, or alter ego to any other defendants or in some other capacity. With leave of Court, Plaintiff will amend this complaint to allege the true names and capacities of the fictitiously named defendants when the same are ascertained.

14. Plaintiff will amend this Complaint when same is known or when and if discovery reveals such other matters.

COMPLAINT FOR DAMAGES

JURISDICTION

15. This Court has jurisdiction under 15 U.S.C. §1121 (action arising under the Lanham Act); 28 U.S.C. §1331 (federal question); 28 U.S.C. §1338 (a) (an Act of Congress relating to trademarks). 28 U.S.C. §1338 (b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws.); and 28 U.S.C. §1367 (supplemental jurisdiction).

16. Defendant, The Hain Celestial Group, Inc. consented to the jurisdiction of the California Courts and venue in the State of California in the Contract, "Exhibit CA", *infra,* which is one of the subjects of this Complaint.

17. Defendants are engaged in business activities in the State of California, through business locations, advertisements, promotions, sales, and the internet.

18. Venue is proper in this district pursuant to 18 U.S.C §1965 (a) and 28 U.S.C. §1391(b) because Defendants transact business within this district and a substantial part of the events and omissions giving rise to the claim occurred in this district.

GENERAL ALLEGATIONS

19. Since approximately October 1998, the date of Sensible Foods' domain name acquisition, Sensible Foods has continuously used its domain name WWW.SENSIBLEFOODS.COM ("Plaintiff's Domain Name"), to promote its goods and services through its Internet website ("Plaintiff's Website") located at the above domain name. Plaintiff has continuously used its SENSIBLE FOODS MARKS (*infra*) in U.S. commerce on Plaintiff's Website and elsewhere.

20. The Plaintiff applied for its first federal registration of its SENSIBLE FOODS word and design mark on May 1, 2002 (App. No. 78/125,557, "SF App. No. '557")). Sensible Foods subsequently

COMPLAINT FOR DAMAGES

submitted App. Nos. 78/402,771 and 78/499,792 on April 15, 2004 and October 14, 2004; ("SF

App. No. '771" and "SF App. No. '792"; respectively) for its SENSIBLE FOODS word marks.

21. The Commissioner for Trademarks reviewed SF App. Nos. '557, '771 and '792 in the United

States Patent and Trademark Office and issued the following registrations to Sensible Foods on

July 6, 2004, December 6, 2005 and June 12, 2007; respectively: Registration No. 2,861,273 ("SF

Reg. No. '273") for the word mark SENSIBLE FOODS & design  in IC class 29; dried fruit

snacks; Registration. No. 3,024,683 ("SF Reg. No. '683") for the word mark SENSIBLE FOODS

in IC 29 for dried fruits, dried vegetables and Registration No.3,252,283 ("SF Reg. No. '283") for

the word mark SENSIBLE FOODS in IC 16, magazines, leaflets, brochures, newsletters featuring

food, health and nutrition; catalogs featuring food, snacks, nutritional supplements, and general

nutritional products.

22. The Plaintiff also maintains Registration No. 3,383,121 for the mark SNACKS MADE

SENSIBLE ("SF Reg. No. '121"), made under Application No.78/827662 ("SF App. No. '662"),

for Dehydrated fruit snacks; Dried fruit mixes; Dried fruits; Dried soybeans; Dried vegetables;

Fruit-based snack food; Vegetable-based snack foods.  SF Reg. No. '121 together with the

Registrations in paragraph [21] are "Sensible Foods' Registered Marks" (individually a

"Registration" or "Registered Mark" and collectively "Sensible Foods' Registered Marks").

23. The Sensible Foods' Registrations are valid, subsisting and owned by Sensible Foods, LLC.

24. Sensible Foods also has substantial rights in common law marks including, but not limited to

SNACKING HAS NEVER BEEN MORE SENSIBLE and SNACKING HAS NEVER BEEN SO

SENSIBLE (individually "SF's Common Law Mark", together with Sensible Foods' Registered

Marks, "SENSIBLE FOODS MARKS").

COMPLAINT FOR DAMAGES

25. On or about July 17, 2009, the Plaintiff filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 of the Trademark Act for Registration No. 2,861,273 establishing that for International Class 029, the mark SENSIBLE FOODS (stylized and or with design) has been in use in commerce on or in connection with all of the goods or services listed in the existing registration for this specific class; and the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, July 06, 2004.

26. On or about August 04, 2009, the Commissioner for Trademarks acknowledged the Plaintiff's §§ 8 & 15 Declaration stating: "The combined declaration of use and incontestability filed in connection with the registration identified below meets the requirements of Sections 8 and 15 of the Trademark Act, 15 U.S.C. §§1058 and 1065. The combined declaration is accepted and acknowledged. The registration remains in force. The finding of the Commissioner represents prima facie evidence that the Plaintiff has the exclusive right to use the marks in commerce for dried fruits and vegetables.

27. On or about December 20, 2010, the Plaintiff filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 of the Trademark Act for Registration No. 3,024,683 establishing that for International Class 029, the mark SENSIBLE FOODS has been in use in commerce on or in connection with all of the goods or services listed in the existing registration for this specific class; and the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, December 6, 2005.

28. On or about January 11, 2011, the Commissioner for Trademarks acknowledged the Petitioner's §§ 8 & 15 Declaration stating: "The combined declaration of use and incontestability filed in connection with the registration identified below meets the requirements of Sections 8 and 15 of

COMPLAINT FOR DAMAGES

the Trademark Act, 15 U.S.C. §§1058 and 1065.  The combined declaration is accepted and acknowledged.  The registration remains in force." REG NUMBER 3,024,683;  MARK: SENSIBLE FOODS; Owner: Sensible Foods, LLC.

29. Since the time of their introduction in 1997, Plaintiff has continuously used one or more of the SENSIBLE FOODS MARKS in commerce in the United States in connection with Plaintiff's Products. All Plaintiff's Products sold in commerce bear one or more of the SENSIBLE FOODS MARKS. The SENSIBLE FOODS MARKS are inherently distinctive and have acquired secondary meaning in the marketplace. The Plaintiff's Products are high-quality, organic and natural specialty-food products that are held in high regard, and used regularly by consumers worldwide.

30.  Defendants, and each of them,  have had constructive knowledge of the SENSIBLE FOODS' MARKS since at least May 1, 2002, the date of Plaintiff's first SF App. No. '557 and such knowledge predates any use in US commerce by Defendants of their Infringing Products and Infringing Works.

31.  Since 1997, long prior to the use of the Infringing Products and Infringing Marks in commerce by Defendants, and each of them, Plaintiff has continuously used the SENSIBLE FOODS MARKS and other marks containing the SENSIBLE FOODS MARKS in commerce in connection with healthy and natural dried fruits, dried vegetables and dried-fruit and vegetable snacks and related goods, as well as in magazines, leaflets, brochures, newsletters featuring food, health and nutrition; catalogs featuring food, snacks, nutritional supplements, and general nutritional products, ("Plaintiff's Products").

**COMPLAINT FOR DAMAGES**

32. The Plaintiff's Registrations are valid, subsisting, and in full effect and serve as prima facie evidence of the validity of each mark and of Plaintiff's exclusive right to use the mark in connection with the goods and services identified therein, pursuant to Section 33(a) of the Lanham Act, 15 U.S.C § 1115(a). Further, SF Reg. No. '273 and SF Reg. No. '683 have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

33. Since long prior to any date upon which Defendants' may rely, Plaintiff has used the phrases, SNACKING HAS NEVER BEEN SO SENSIBLE and SNACKING HAS NEVER BEEN MORE SENSIBLE in its product brochures and trade show programs and directories at, among other national food-industry trade shows, New Hope Natural Media's Natural Products Expo East ("NPEE"), New Hope Natural Media's Natural Products Expo West ("NPEW"), National Association of Specialty Food Trade's ("NASFT") Fancy Food Show, as well as numerous regional trade shows.

34. Among other uses, Plaintiff attended New Hope Natural Media's 2005 NPEE trade show at which the Plaintiff used its common law trademarks SNACKING HAS NEVER BEEN SO SENSIBLE! in the NPEE's New Products Directory.

35. Among other uses, Plaintiff attended New Hope Natural Media's 2008 NPEW trade show and again used its common law trademark SNACKING HAS NEVER BEEN SO SENSIBLE! in the NPEW's New Products Directory.

36. Plaintiff has sold millions of dollars worth of goods in connection with its SENSIBLE FOODS MARKS.

COMPLAINT FOR DAMAGES

37. The Plaintiff's products are seen by millions of consumers on nationwide TV, including at least 41 prime-time airings, representing over 200 minutes of actual airtime and exposure of the SENSIBLE FOODS MARKS in connection with Plaintiff's Products.

38. Since its inception in 1997, and long before any date upon which Defendants may rely, Sensible Foods has spent significant sums, devoted significant resources and bargained for significant promotional value advertising and promoting its SENSIBLE FOODS MARKS worldwide.

39. Due to the popularity of Plaintiff's goods offered in connection with the SENSIBLE FOODS MARKS and its common law marks and its advertising, promotion, and unsolicited recognition from awards and published articles of the SENSIBLE FOODS MARKS Plaintiff has built up and now owns an extremely valuable goodwill, which is symbolized by its SENSIBLE FOODS MARKS and its common law marks.

40. Defendants, and each of them, are a large and powerful combination of companies that have money, power, and influence far greater than Plaintiff and wield their power and influence to the detriment of smaller companies, i.e. Plaintiff, that operate in the processed and packaged-goods industry.  Defendant, Hain C, had reported revenues of over $917 million for the fiscal year ended June 30, 2010 and has over 2,000 employees, providing Defendants' with nearly unsurmountable bargaining power.

### Defendants' Wrongful Conduct

41. On or about March 28, 2005, Defendant, World Gourmet Marketing, LLC, ("WGM") filed Application No. 78/596,051 ("WGM App. No. '051") under Trademark Act Section 1(b) or 15 U.S.C. 1051(b), establishing an "intent-to-use" status under IC classes 29 and 30 with a

COMPLAINT FOR DAMAGES

description of goods as follows: IC 029. US 046; Protein-based nutrient-dense snack bars, soy-based food bars; soy-based snack foods; potato-based snack foods; snack food dips; potato chips; soy chips; soy nuts. IC 30. US 046; crackers; cookies; corn chips; tortilla chips; bakery goods, ready to eat, cereal derived food bars; granola-based snack bars, chocolate-based ready to eat food bars, ("WGM Goods 05-051").

42. In WGM App. No. '051, WGM stated to the Commissioner for Trademarks: "Intent to use: The Applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services.(15 U.S.C. Section 1051(b))"

43. In WGM App. No. '051, applicant's president, the signatory of the application, declared under penalties of 18 U.S.C. § 1001, that "if the application is being filed under 15 U.S.C. §1051(b), he/she believe applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion, reverse confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true."

44. Defendants and each of them had constructive notice of Plaintiff's use of the SENSIBLE FOODS MARKS as early as May, 1, 2002 (SF App. No. '557), well before the Defendants' application date of March 28, 2005, which makes the Defendants' March 28, 2005 statements in its declaration "false statements" under 18 U.S.C. §1001.

45. Defendants and each of them had constructive notice of Plaintiff's continued use of the SENSIBLE FOODS MARKS on April 15, 2004 (SF App. No. '771) and again on October 14, 2004 (SF App. No. '792), well before the Defendants' application date of March 28, 2005, which makes his chronological declarations made part of Cohen Decl. 3-28 "false statements" under 18 U.S.C. §1001.

46. Defendants and each of them had constructive notice of Plaintiff's nationwide priority of use of the SENSIBLE FOODS MARKS on July 6, 2004 when the PTO issued SF Reg. No. '273 well before Defendants' application date of March 28, 2005, which makes the Defendants' March 28, 2005 statements in its declaration "false statements" under 18 U.S.C. §1001.

47. Defendants and each of them had constructive notice of Plaintiff's nationwide priority of use of the SENSIBLE FOODS MARKS on December 6, 2005 when the PTO issued SF Reg. No. '683 well before the Defendants' Statement of Use date of August 10, 2006.

48. On July 18, 2006, the USPTO issued a Notice of Allowance to Defendants through their attorney stating: "...You have six (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION." (emphasis in original).

49. Nearly eighteen (18) months from the date of WGM App. '051 and one month after the Notice of Allowance, on August 09, 2006, Defendants submitted a Statement of Use ("SOU") to the

USPTO under 15 U.S.C. § 1051(d) claiming "SPECIMEN DESCRIPTION: Packaging for Goods." The USPTO "mail/ create" date is August 10, 2006.

50. With the SOU, Defendants provided two specimens of examples of its use of the subject mark of WGM App. No. '051, which consists of a mainly blue packaging material with verbiage. Each specimen clearly indicates the phrase, "only 100-calorie portions," a phrase conveying an immediate idea of a quality, characteristic, function, feature, purpose and use of the Defendant's products; namely, a 'sensible portion,' which has been adopted industry wide as "100 calories."

51. For the very first time, on August 10, 2006, Plaintiff had an opportunity to have knowledge from the SOU and its specimens about Defendants' intention of use of the Infringing Marks on the Infringing Products, well after the Plaintiff's right to oppose WGM App. No. '051 expired.

52. For the very first time, on August 10, 2006, Defendants declare the date of first use of July 01, 2003, nearly two years prior to his assertions in WGM App. No. '051 which is an 'intent-to-use' application and well after the Plaintiff's right to oppose expired.

53. On or about January 2, 2007, the Commissioner for Trademarks provided World Gourmet with Registration No. 3,195,083 for the mark SENSIBLE PORTIONS "SP Reg. No. '083", detailed in WGM App. No. '051 under the intent-to-use status of section 1(b) of the Trademark Act.

54. On or about June 22, 2007, Defendant, World Gourmet Marketing, LLC, filed with the USPTO, Application No. 77/210,120 ("WGM App. No. '120") for the mark "SENSIBLE SNACKS," in connection with goods substantially similar to Plaintiff's Goods.

55. On September 21, 2007, the trademark examining attorney mailed an office action to the Defendant, applicant World Gourmet Marketing, LLC, regarding "SP App. '120" for the mark "SENSIBLE SNACKS" stating among other findings: "Registration Refusal –Likelihood of

Confusion 2(d):  The examining attorney refuses registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d), because the applicant's mark, when used on or in connection with the identified goods/services, so resembles the marks in U.S. Registration Nos. 3,024,683 and 2,861,273 as to be likely to cause confusion, to cause mistake, or to deceive.  TMEP §§1207.01 et seq."

56. The trademark examining attorney continued: "Registration Refusal -Similarity of Marks:  The Applicant's mark is SENSIBLE SNACKS.  The registrant's marks are SENSIBLE FOODS and SENSIBLE FOODS with a design.   The marks are similar in sound, appearance and commercial impression because they each contain the dominant term SENSIBLE.  Further, the terms SNACKS and FOODS convey a highly similar commercial impression."

57. The trademark examining attorney continued: "Registration Refusal -Similarity of Goods/ Services: The applicant's goods/services are "protein-based nutrient-dense snack bars; soy-based food bars; soy-based snack foods; potato-based snack foods; snack food dips; potato chips; soy chips; soy nuts; vegetable-based snack foods; pellet snacks" and "crackers; cookies; corn chips; tortilla chips; bakery goods; ready to eat, cereal-derived food bars; granola-based snack bars; chocolate-based ready to eat food bars; grain-based chips; cheese flavored snacks, namely, cheese curls; corn-based snack foods; popcorn; caramel popcorn; glazed popcorn; pita chips".  The registrant's goods are Dried Fruits, Dried Vegetables and Dried fruit snacks respectively.  The goods are related because these goods are all snack foods which would be marketed and sold to similar consumers using the same channels of trade."

58. The trademark examining attorney continued: "Attached are copies of printouts from the USPTO X-Search database, which show third-party registrations of marks used in connection with the

COMPLAINT FOR DAMAGES

same or similar goods and/or services as those of applicant and registrant in this case. These printouts have probative value to the extent that they serve to suggest that the goods and/or services listed therein are of a kind that may emanate from a single source."

      a.   The XSearch copies include third-party registrations, which include SF Reg. Nos. '273 and '683.

59. The trademark examining attorney continued: "Accordingly, registration [77/210,120] is refused under Trademark Act Section 2(d), 15 U.S.C. §1052(d)."

60. The trademark examining attorney continued: "The examining attorney must resolve any doubt as to the issue of likelihood of confusion in favor of the registrant and against the applicant who has a legal duty to select a mark which is totally dissimilar to trademarks already being used. Burroughs Wellcome Co. v. Warner-Lambert Co., 203 USPQ 191 (TTAB 1979).

61. The trademark examining attorney continued: "Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration."

62. The trademark examining attorney continued: "Prior Pending Application: Information regarding pending Application Serial No. 78827662 is enclosed (SF App. No. '662 and SF Reg. No. '121) for the mark SNACKS MADE SENSIBLE. The filing date of the referenced application precedes applicant's filing date. There may be a likelihood of confusion between the two marks under Trademark Act Section 2(d), 15 U.S.C. §1052(d). If the referenced application registers, registration may be refused in this case under Section 2(d). 37 C.F.R. §2.83; TMEP §§1208 et seq. Therefore, upon entry of a response to this Office action, action on this case may be suspended pending final disposition of the earlier-filed application."

        COMPLAINT FOR DAMAGES

63. On April 28, 2008 the Commissioner for Trademarks mailed an Abandonment Notice for the mark "SENSIBLE SNACKS" under WGM App. No '120 stating in part: "The trademark application identified below was abandoned in full because a response to the Office Action mailed on Sep 21, 2007 was not received within the 6-month response period."

64. Although invited by the trademark examining attorney, neither Defendants in general nor WGM in particular sought reversal of the Examining Attorney's findings through any court or board of competent jurisdiction and therefore abandoned its application of the SENSIBLE SNACKS mark which demonstrated to Plaintiff that Defendants were abandoning their attempt to use and perfect rights in the mark SENSIBLE SNACKS and related marks. Defendants were informed that marks related to SENSIBLE SNACKS were likely to cause public confusion, mistake or deception.

65. Plaintiff is informed and believes and based upon such information and belief alleges from the Defendants-provided specimens in the SOU, that Defendants realized that the 'world-gourmet' market was not as lucrative or trendy as the healthy, natural, food-allergy and portion-control markets so the Defendants slowly, willfully, incrementally, and maliciously changed their Infringing Works and Infringing Products, their marketing activities, channels of distribution, and business activities mischievously creeping closer and closer through progressive encroachment to Plaintiff's trade dress, packaging, channels of distribution, publications, as well as its SENSIBLE FOODS MARKS and its SNACKING HAS NEVER BEEN SO SENSIBLE and SNACKING HAS NEVER BEEN MORE SENSIBLE common law marks.

66. Plaintiff is informed and believes and based upon such information and belief alleges that Defendants exhibited at the New Hope Natural Media's 2008 NPEW under the World Gourmet

COMPLAINT FOR DAMAGES

Marketing name.  The NPEW 2008 Program contained the following listing for WGM:  "Booth

5414, World Gourmet Marketing, LLC, 49 Lincoln Road, Butler, New Jersey, 07405;

WWW.SENSIBLEPORTIONS.COM, contact:  slauria@wgourmet.com.  with the following text:

"The Next generation in healthy snacking, sensible portions (R) meets the lifestyle demands of

healthier eating in a fast-paced world.  Products include all natural, baked multi-grain crisps, soy

crisps, pita chips, pita crackers, and portion control snacks."  The program did *not*  include the

following language " Snacking has never been more sensible" or "Snacking has never been so

sensible."

67. On September 23, 2009, Defendant, WGM, filed application Application No. 77/833,386 (the

"WGM App. No. '386") in the PTO to register SENSIBLE PORTIONS, which is positioned

partially in front of a heart-shaped design (SENSIBLE PORTIONS mark with the design the

"SENSIBLE PORTIONS Logo Mark"), in International Classes 05 and 29 with a description of

goods as follows: IC 005; Energy boosting bars for use as a meal substitute; Meal replacement

bars; Nutritional energy bars for use as a meal substitute; Nutritionally fortified beverages;

Nutritionally fortified water; IC 029. US 046: Cheese; Prepared meat; Processed meat; Yogurts,

("Applicant's Goods 09-386").

    a.  The status of WGM App. No. '386 was Section 1(b) of the Trademark Act.

    b.  On March 21, 2011, the Commissioner for Trademarks mailed an abandonment notice

      for failure to file a Use Statement stating: "Current Status of March 21, 2011

      Abandoned because no Statement of Use or Extension Request was timely filed after

      Notice of Allowance was issued.".

    c.  On March 28, 2011, Defendants revived WGM App. No '386.

68. On or about September 23, 2009, Defendant, World Gourmet, filed Application No. 77/833,401, seeking registration on the Principal Register of the mark SENSIBLE PORTIONS, which is positioned partially in front of a heart-shaped design (the "WGM App. No. '401"), in International Classes 29 and 30 with a description of goods as follows: IC 029. US 046: Protein-based nutrient-dense snack bars; soy-based food bars; soy-based snack foods; potato-based snack foods; snack food dips; potato chips; soy chips; soy nuts; vegetable chips; vegetable-based snack foods; pellet snacks, namely, hot air expanded pellet snacks consisting primarily of soy, potato or vegetables and IC 030. US 046: Crackers; cookies; corn chips; corn-based snack foods; tortilla chips; bakery goods; ready to eat, cereal derived food bars; granola-based snack bars; chocolate-based ready to eat food bars; pita chips; grain-based snack foods; grain-based chips; rice-based snack foods; pellet snacks, namely, hot air expanded pellet snacks consisting primarily of grains; puffed corn snacks; cheese flavored snacks, namely, cheese curls; cheese flavored puffed corn snacks ("Applicant's Goods 09-401").

    a. The status of the WGM App No. '401 Application is Section 1(a) of the Trademark Act

69. On February 16, 2010 the USPTO published for Opposition WGM App. Nos. '386 and '401.

70. On or about August 12, 2010, Plaintiff's representatives participated in a conference call with Irwin Simon, CEO of Hain C, who specifically stated that he would not give-up use of the SENSIBLE PORTIONS mark, the product name, and other Infringing Works regardless of the adverse impact on and damage to Plaintiff, in total disregard of Plaintiff's rights. Mr. Irwin did state that he would modify, address or discontinue the use of the term "sensible snacks," although no such changes have occurred and the Defendants' conduct has continued unabated.

COMPLAINT FOR DAMAGES

71. On or about August 13, 2010, Plaintiff and Defendants stipulated to a Motion to Suspend the Proceeding (then Opposition No. 91195262) for discussion purposes.

72. On October 4, 2010, the TTAB accepted all previous requests from Plaintiff and Defendant, Hain C and WGM, regarding the proceedings before the TTAB, which combined the opposition and cancellation proceeding under Opposition No. 91195262 and Cancellation No. 92053083, providing that proceedings will continue automatically with a new trial schedule as set forth in the Order.

73. On November 25, 2010, within the trial schedule set forth by the TTAB, Plaintiff filed its Combined Notice of Opposition and Petition for Cancellation, Nos. 91195262 and 92053083, respectively.

74. Plaintiff is informed and believes and based upon such information and belief alleges that Defendants attended the KeHe Distributor Show, Dallas Texas on February 7 & 8, 2011 at which Defendants' make a virtually identical use of Plaintiff's SNACKING HAS NEVER BEEN SO SENSIBLE and SNACKING HAS NEVER BEEN MORE SENSIBLE common law marks by using the phrase "SNACKING HAS NEVER BEEN MORE SENSIBLE" in connection with the sale, promotion and marketing of the Infringing Products.

75. Plaintiff is informed and believes and based upon such information and belief alleges that Defendants have used and continue to use willfully, knowingly, maliciously and unlawfully the Infringing Works to market, sell and distribute in U.S. commerce their Infringing Products without Plaintiff's authorization. Such improper and unlawful use includes, but is not limited to (i) use of the Infringing Works as business names, (ii) use of the Infringing Works to market the defendants respective goods and services; (iii) use of the Infringing Works on building signage,

COMPLAINT FOR DAMAGES

contracts and letterhead, (iv) use of the Infringing Works in its internet domain names and/or searches, (v) use of the Infringing Works on websites, and (vi) use of the Infringing Works on advertising, trade, and promotional materials.

76. Plaintiff is informed and believes and based upon such information and belief alleges that the Plaintiff's present and targeted customer bases overlap with the present and targeted customer bases of Defendants.

77. Plaintiff is informed and believes and based upon such information and belief alleges that the Plaintiff's present and targeted channels of distribution are the same as the present and targeted channels of distribution of Defendants.

78. The unauthorized use of the Infringing Works in connection with its Infringing Products marketed and sold by Defendants in U.S. commerce has irreparably injured Sensible Foods by confusing consumers, distributors and trade participants and by diverting sales. If permitted to continue, the willful, malicious and unlawful actions of defendants will continue to irreparably injure Plaintiff, its reputation and goodwill, as well as the public interest in being free from confusion, reverse confusion, mistake or deception.

79. The use of Plaintiff's intellectual property and/or the Infringing Works in connection with the Infringing Products by the Defendants has caused and will continue to cause confusion, reverse confusion, mistake, or deception as to the nature and qualities of the Infringing Products and/or products sold by Defendants thereby injuring the Plaintiff and the public.

80. Plaintiff is informed and believes and based upon such information and belief alleges that in or around October 18, 2002, Defendant, WGM registered the domain name WWW.SOYCRISPS.COM ("WGM's SoyCrisps Domain Name") and subsequently posted an

Internet website at that address ("WGM's SoyCrisps Website"). The content of WGM's SoyCrisps Website clearly indicates that Defendants are responsible for its posting. Now, the public is redirected to WWW.SENSIBLEPORTIONS.COM when WGM's SoyCrisps Domain Name is entered into an internet browser.

81. Plaintiff is informed and believes and based upon such information and belief alleges that in or around September 14, 2005, Defendant, WGM, registered the domain name WWW.WGOURMET.COM ("WGM's Domain Name"), and subsequently posted an Internet website at that address ("WGM's Website"). The content of WGM's Website clearly indicates that Defendants are responsible for its posting as the public is redirected to WWW.SENSIBLEPORTIONS.COM when WGM's Domain Name is entered into an internet browser.

82. Plaintiff is informed and believes and based upon such information and belief alleges that in or around September 14, 2005, Defendants registered the confusingly-similar domain name WWW.SENSIBLEPORTIONS.COM ("Defendants' Domain Name," together with WWW.SOYCRISPS.COM and WWW.WGOURMET.COM, "Defendants' Websites" ), and subsequently posted an Internet website at that address ("Defendants' Website" together with WGM's SoyCrisps Website and WGM's Website "Defendants' Websites"). The content of Defendants' Websites clearly indicate that Defendants are responsible for their postings.

83. Defendants' Websites use and incorporate Infringing Works, marks and designs that are confusingly similar to Plaintiff's Marks.

84. On or about and between the dates April 19, 2007 and March 19, 2008, Defendants conducted a recall of their products, which has led to extensive damage to and confusion with the Plaintiff's

---

- 23 -                                    COMPLAINT FOR DAMAGES

goodwill and reputation and goods; respectively.  Subsequent to the recall, on or about September 18, 2009, Plaintiff received an email from a consumer confusing the source of the defective Garden Veggie Chips sold by Defendants and complaining to Plaintiff of a "yellow cheesey looking substance on it that was covered in MOLD."  The confusion with and association to Defendants' defective product(s) seriously injured and could likely further injure the reputation and consumer trust that Plaintiff has established in its organic, natural and healthy dried fruit and vegetable snacks sold in connection with the SENSIBLE FOODS MARKS.

85.   On October 5, 2010, WGM assigned the entire interest in WGM App. No. '386, WGM App. No. '051 and SP Reg. No. '083  to Hain G as per the USPTO website (Trademark Assignment Abstract of Title; Reel/Frame: 4290/0117).

## REPRESENTATIVE ACTUAL CONFUSION

86.   On or about April 1, 2008, right before the Defendant, WGM, abandoned their App. No. 77/210120 on April 28, 2008, a Media Consultant for the Working Media Group, wrote an email to the Defendants' officer, Jason Cohen, using the Plaintiff's domain name; namely, jason@sensiblefoods.com, regarding their services: "We are media planners and buyers working with small to medium size businesses."

87.   On April 1, 2008, Mr. Baxes, President of Plaintiff, called the media consultant to discuss the email to Jason Cohen. During the conversation, the media consultant confused Sensible Foods with Sensible Portions, writing in her follow-up email:  "I know that we can help you...in developing an advertising campaign for Sensible Foods, not to be confused with Sensible Portions as I Did."

88. On July 24, 2008, Monel, Inc. of Miami, Florida, issued Inv. No. WEB2008 to Sensible Portions an invoice for web fees associated with the inclusion of vendor products on the MONELGOURMET.COM web site, such invoice amounting to $325.

89. On September 17, 2008, unbeknownst to Plaintiff at the time, a representative of Monel, Inc. of Miami, Florida wrote an email to themselves and presumably to many of Monel's clients, one of which was Shawn Sweeney, Senior Vice President of Sales for World Gourmet/Sensible Portions. The Subject was America's Food and Beverage Show. Said email requested a "$400 Contribution" to show interested clients' products at the trade show.

90. On September 19, 2008, Shawn Sweeney (shawn@wgourmet.com) responded, "We would love to do it. Please showcase the 5oz. Pita Bites boxed Crackers. Thanks. Shawn.

91. Nearly ten months after the email exchange between Monel and Shawn Sweeney, Plaintiff, also a vendor with Monel, Inc. received Check No. 087942 for $756.76 made out to Sensible Foods, LLC, with deductions for the July 24, 2008 Web Invoice in the amount of $325 and the $400 contribution for the America's Food and Beverage Show both of which were Defendants' charges.

92. Plaintiff is informed and believes and based upon such information and belief that Defendants were aware of the public confusion and or reverse confusion mounting from their use of the Infringing Works and Infringing Products in U.S. commerce.

93. On or around April, 2009, the Defendant, WGM, placed an ad in both The New Seasons Market's circular and its online website at NewSeasonsMarket.com for the Defendants' Multigrain Crisps product for the week of May 13 - May 19, 2009.

94. On May 12, 2009, New Seasons Market issued Invoice No. 051309G-19 to Dynamic Presence, Inc., 5100 South Dawson Street Suite 103, Seattle, WA 98108 ("Dynamic") for: "Item No.: GRINS600; Description/Comments: Sensible Portions Snacks Ad; Quantity: 1; Unit Price: $600; Amount: $600," said invoice also stating that "Past Due invoices may be deducted through UNFI or JC Wright."

95. On a template letter created on or about March 31, 2008, the date of which was never changed, a representative of the New Seasons Market authorized UNFI to deduct the past-due invoice for the Defendants' ad, "including a 2.5% processing fee."

96. Resolution of the New Seasons Late invoice. On October 1, 2009, UNFI deducted from check no. 105586 the amount of Defendants' Inv. 051309G-19 ($600) plus the 2.5% processing fee ($15) for a total of $615 from the PLAINTIFF's accounting. Said deduction for $615 is represented on United Natural Foods West, Inc. accounting on September 22, 2009 Invoice No. NSEA051309G19SEP09, which represents the deduction authorized by New Seasons Market's Inv. No. 0513009G-19 for the Defendants' advertisement.

97. In or around June through August, 2009, Shawn Sweeney authorized discounts on behalf of "World Gourmet "Sensible Portions"" for its Broker, True North Marketing in regards to "2009 CAW," (Customer Appreciation Weekend trade show operated by Tree of Life).

98. On September 23, 2009, Tree of Life Corporate, a natural-products distributor of St. Augustine Florida faxed an invoice WM09132 to Plaintiff for Defendants' obligation in an amount of $450 for MW CAW Booth Show for which Shawn Sweeney authorized show discounts.

COMPLAINT FOR DAMAGES

99.   On October 9, 2009, Tree of Life of St. Augustine Florida issued check No. 00414741 to Sensible Foods in the amount of $479.48 with deductions for "Inv. No. MW09132: MW CAW Booth & Show Fees."

100.   On or about October 7, 2009, Plaintiff received a letter addressed to "Mr. Jason Cohen, [President of Defendant] **Sensible Foods LLC**, 782 Thompson Lane, Petaluma, CA 94952" from Step Strategy of Los Angeles, CA.

101.   Plaintiff is informed and believes and based upon such information and belief alleges that Defendants were aware of the public confusion, reverse confusion, mistake and Defendants' deception mounting from Defendants' use of the Infringing Works in U.S. commerce.

102.   Plaintiff is informed and believes and based upon such information and belief alleges that at all relevant times herein, Stephanie Galliano was an agent, representative, contact or employee of Defendants responsible for among other duties and activities, purchasing booth space at The National Confectioners Associations' ("NCA") Sweets & Snacks Expo ("NCASSE") held between May 25-27, 2010 at McCormick Place in Chicago, IL.

103.   Plaintiff is informed and believes and based upon such information and belief alleges that Defendants chose or were assigned Booth No. 466 at NCASSE.

104.   In or around January 29, 2010, Plaintiff received the PAST DUE invoice No. 7781 for $6,800.00 with an amount due of $2,800.00, addressed to Stephanie Galliano, SENSIBLE FOODS (emphasis added), P.O Box 750832, Petaluma, CA 94975-0832 the "Final Installment of Two" for "2010 ACE 10 X 20 Booth Space No. **466**" ordered on May 21, 2009, Order No. 21899, under Account No. 75091."

COMPLAINT FOR DAMAGES

105. In or around February 4, 2010, David Baxes, President of Plaintiff, called an accountant of NCA to discuss NCA's Invoice No. 7781.

106. On February 4, 2010, an accountant for the NCA wrote an email to Plaintiff regarding Mr. Baxes' phone call stating: "David, Thank you for your recent call. Please accept my sincere apologies for the mix up with invoice #7781 that was sent to Sensible Foods in error. It should have gone to Sensible Portions in [B]utler, NY and I inadvertently keyed in Sensible Foods. Please disregard the invoice and I have made the correction on my end. Thank you for your understanding."

107. Plaintiff is informed and believes and based upon such information and belief that Defendants were aware of the public confusion, reverse confusion, mistake and Defendants' deception mounting from Defendants' use of the Infringing products and Infringing Works in U.S. commerce.

108. On February 23, 2010, Plaintiff received an email from the Senior Account Manager at New Hope Natural Media with the subject: "Expo West-Confusion with Company Name" that stated: "...I received a marketing contract from you and wanted to make sure that it was not a duplicate. Little did I know that the account that i was looking at was "Sensible Portions." Luckily, as I was speaking with Donny [VP Sales, Sensible Foods], I realized that you were an entirely different company (Sensible Foods, LLC), were in different states, etc. Again I apologize. You are all set with your Product Showcase and we look forward to seeing you at Expo West."

109. On May 11, 2010, Linda Pearl, Retail Account Manager for Sensible Foods, LLC, wrote an email to David Baxes, President of Plaintiff, with the subject: "Customer Calling for Sensible Portions", stating: "On Monday May 3, 2010, there was a message over the weekend from a

COMPLAINT FOR DAMAGES

customer wanting to change their order with us. I returned a call to [customer name] at [phone number]. She wanted to change her veggie chips flavor. I told her that we didn't sell veggie chips, was she sure that Sensible Foods [.com] was how she placed her order. She assured me yes....that was the company. When I asked her if Sensible Portions was the product she wanted....again she said yes. I then told her we were two separate companies. She apologized and said a quick good-by."

110. On May 24, 2010, a representative from Rhoads & Smith, Inc., of Mountville, PA wrote an email to jmoran@sensiblefoods.com, presumably meant for John Moran, VP of Marketing, World Gourmet Marketing, LLC offering "custom POP displays."

111. Between June, 2010 and November 2010, Plaintiff received the following emails all of which demonstrate the public's confusion and mistake with respect to the source of Plaintiff's and Defendants' products:

    a.   "We had your [Plaintiff's] company in error on sourcing and item. We ultimately found that it was Sensible Portions that we were sourcing."

    b.   "I have had a hard time finding the veggie straws. Are you going to offer them online anytime soon to purchase."

    c.   Plaintiff's internal email memorializing caller from National PKU News: "She confused Sensible Portions with us and asked for the nutritional information on the apple straws that Sensible Portions makes."

112. On Monday January 3, 2011, a prospective employee of Defendants, sent a message to Plaintiff using the Plaintiff's contact form at http://sensiblefoods.com/contact stating: "I would like to

have information on employment opportunities and how i can apply for the Lancaster, PA

location [phone number]." (Location for Sensible Snacks, Inc.).

113. On Monday February 4, 2011, a customer of the Defendant sent a message using the Plaintiff's

contact form at http://sensiblefoods.com/contact stating: "I just wanted to share with you that

we tried your product for the very first time at Meijer's today (sweet bbq potato straws) and my

kids loved them...Good job, since my one is a very, very picky eater!"

114. On March 7, 2011 a Senior Resolutions Coordinator for Global Experience Specialists ("GES"),

wrote an email to Plaintiff regarding the near disaster that resulted from the confusion, reverse

confusion, and mistake related to the logistics and delivery of trade-show supplies to the

Plaintiff's and Defendants' trade-show booths, No. 526 and No. 117; respectively, for the 2011

KeHE Summer Selling Show held in Dallas, Texas on February 7 & 8, 2011. In said email, the

coordinator states: " I have been in my position for 4 years and i have never spoken with an

exhibitor that has experienced this type of confusion at a show." GES informed Plaintiff that its

booth had arrived on the trade-show floor when in fact it had not arrived because GES confused

the delivery of Defendants' trade-show supplies (the Defendants' booth) with delivery of

Plaintiff's trade-show supplies (the Plaintiff's booth). The confusion and mistake nearly caused

Plaintiff to forfeit (due to set-up time deadlines) Plaintiff's right to exhibit, as well as all of the

normal fees, costs, resources and financial outlays associated with exhibition.

COMPLAINT FOR DAMAGES

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Contract--Confidentiality Agreement (CA)

115. Plaintiff re-alleges each and every allegation set out above in this Complaint.

116. On August 16, 2010, Plaintiff and Defendant, Hain C, signed the CA. a true and correct copy of the Agreement is attached hereto as "Exhibit CA" and incorporated herein by this reference as though fully set forth at length below.

117. The CA provides that any information not generally known to the public will be deemed Confidential. In addition, any information provided to Hain C will be deemed Confidential. Further, the CA provides that "Confidential Information" means among other items detailed in the CA, "financial information," "performance results," and "trade secrets."

118. The CA further provides among other provisions that Hain C will limit access to its "("Representatives") who have a need to know such Confidential Information and only for the Permitted Purposes."

119. Plaintiff and Defendants entered into those agreements to protect Plaintiff's financial status, trade secrets and other proprietary information, data or otherwise from unwanted public disclosure and improper use.

120. The confidentiality agreements were valid and enforceable contracts supported by adequate consideration.

121. Plaintiff performed all conditions, covenants and promises required of the company in accordance with the terms of the CA.

COMPLAINT FOR DAMAGES

122. Defendants failed to perform all of the conditions, covenants and promises required of them under the confidentiality agreements, including, but not limited to disclosing all or a portion of Plaintiff's Confidential Information without the express or implied consent of Plaintiff as required by the CA.

123. By failing to abide by the terms of the Confidentiality Agreement, Defendants breached those agreements and caused Plaintiff irreparable harm and damages.

124. As a direct and proximate result of such breach, Plaintiff has been damaged in an amount to be ascertained at trial. Due to the particular nature of Defendants' breaches and all of the Defendants' financial gain, Plaintiff's damages cannot be determined at this time, and will be determined after Plaintiff has completed discovery and discerned the full nature and scope of these breaches and Plaintiff's damages.

SECOND CAUSE OF ACTION

Breach of the Implied Contract against Hain C

125. Plaintiff re-alleges each and every allegation set out above in this Complaint.

126. Plaintiff invested substantial time, skill, resources and money to develop supply and manufacturing resources in the United States because of both the U.S. public's, as well as the international community's perceived quality of U.S. sourced goods, especially agricultural products.  During the course of discussions and under the presumed protection of the CA, Plaintiff disclosed to Hain C its valuable ideas and its novel, confidential information related to Plaintiff's products.  Hain C knew that such information was being disclosed in confidence and that it had no right to use such information apart from Hain C's consideration of  its purchase of

COMPLAINT FOR DAMAGES

Plaintiff in place of Plaintiff continuing Opposition No. 9195262 and Cancellation No. 92053083.

127.   Defendants' accepted Plaintiff's disclosures knowing fully that Plaintiff's disclosed its ideas and information as part of a prospective business relationship with Hain C, whereby Plaintiff would, among other activities manufacture and distribute its products for Defendants, under multiple brand names. Defendants' understood that it was not to use the information for any purpose other than the Permitted Purposes in the CA and that any other use would require Plaintiff's permission and that Plaintiff would expect compensation for any other use, thereby creating an implied contract. Upon information and belief, Defendants' used Plaintiff's information without compensating Plaintiff for such use - a breach of that implied contract.

128.   As a direct and foreseeable result of Defendants' breach, Plaintiff has incurred damages in an amount not yet ascertained. Plaintiff, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

Breach of the Implied Covenant of Good Faith and Fair Dealing against Hain C

129.   Plaintiff re-alleges each and every allegation set out above in this Complaint.

130.   Plaintiff and Hain C had an implied covenant of good faith and fair dealing in their relationship with each other which was violated when Hain C used its disparate bargaining power and assurances made to Plaintiff that caused Plaintiff to delay expansion plans in consideration of Hain C's offer to purchase Plaintiff all of which destroyed Plaintiff's right to receive the fruits of the Confidentiality Agreement between Plaintiff and Hain C.

131. Hain C's actions were inconsistent with Plaintiff's justified expectations that Hain C would not manufacture or source Plaintiff's similar unique products from industry sources other than Plaintiff for Hain C's own profit and gain and/or to the detriment of Plaintiff. These were conscious and deliberate acts, which as a direct and proximate result, unfairly frustrated the agreed common purpose of the Confidentiality Agreement and disappointed the reasonable expectation of Plaintiff and thereby deprived Plaintiff of the benefits of the Confidentiality Agreement.

132. As a direct and proximate result of Hain C's actions, and the breach of the covenant of good faith and fair dealing, Plaintiff has been damaged.

133. The amount of Plaintiff's damages cannot be fully determined at this time, and will be determined after Plaintiff has conducted discovery and discerned the full nature and scope of the Hain C's breaches and Hain C's actions.

FOURTH CAUSE OF ACTION

State Trademark Infringement

(Ca. Bus. & Prof. Code §§14200 et seq.)

134. Plaintiff re-alleges each and every allegation set out above in this Complaint.

135. Defendants' wrongful conduct as described herein constitutes trademark infringement in violation of Section 14200 et seq. of the California Business and Professions Code and California common law have been committed with full knowledge of and disregard for Plaintiff's rights and with the intent to cause confusion, reverse confusion, and/or mistake and to deceive.

136. Since May 1, 2002 and thereafter, Plaintiff has given notice that it is using its SENSIBLE FOODS MARKS on its products in U.S. commerce and since approximately July 6, 2004, the registration date for SF Reg. No. '273 provided by the USPTO, Plaintiff has given notice of its SENSIBLE FOODS MARKS by displaying with them the letter "R" enclosed within a circle. In addition, Plaintiff has provided actual notice to Defendants of the Sensible Foods' Registrations and Defendants have been notified by the USPTO of Sensible Foods' Registrations.

137. Defendants threaten to continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so to Plaintiff's irreparable damage. It would be difficult to ascertain the amount of compensation that could afford Plaintiff adequate relief for such continuing acts. Plaintiff's remedy at law is inadequate to compensate it for the injuries inflicted and threatened by Defendants' conduct and it is therefore entitled to temporary, preliminary and permanent injunctive relief.

138. As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial, but not less than the jurisdictional minimum of this Court.

FIFTH CAUSE OF ACTION

Contributory Infringement

139. Plaintiff re-alleges each and every allegation set out above in this Complaint.

140. By engaging in the conduct set forth above, Defendants, have contributed, aided and/or encouraged other Defendants and Does 1-20 to infringe the SENSIBLE FOODS' MARKS to promote, market, distribute and/or sell the Infringing Products using the Infringing Works.

141. Plaintiff is informed and believes that Defendants' acts contribute to, aid and/or encourage Defendants to infringe the SENSIBLE FOODS MARKS; to promote, market, distribute and/or

sell Defendants' goods or products including, but not limited to the Infringing Products; were committed with full knowledge of and disregard for Plaintiff's rights, including Plaintiff's national market rights with respect to the sale of Plaintiff's goods under its protected SENSIBLE FOODS' MARKS and common law marks; and with the intent to cause confusion, reverse confusion, mistake, and/or to deceive.

142. As a result of Defendants' acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation, goodwill and the lost of sales and profits Plaintiff would have made but for Defendants' acts in an amount according to proof but in excess of the jurisdictional minimum of this Court.

143. Defendants' actions demonstrate willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequence, rendering Defendants' liable to Plaintiff for additional punitive damages over and beyond Plaintiff's actual damages.

144. Defendants threaten to continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so to Sensible Foods' irreparable damage. It would be difficult to ascertain the amount of compensation that could afford Sensible Foods' adequate relief for such continuing acts. Sensible Foods' remedy at law is inadequate to compensate it for the injuries threatened by defendants' conduct, and it is therefore entitled to injunctive relief.

## SIXTH CAUSE OF ACTION

### Unfair Competition under California Law

### (Cal. Bus. & Prof. Code §§ 17200 et seq.)

145. Plaintiff re-alleges each and every allegation set out above in this Complaint.

146. Defendants' wrongful acts as described herein constitute unlawful, unfair, and/or fraudulent business practices in violation of Section 17200 et seq. of the California Business and Professions Code and California common law, including, without limitation, "palming off" and or "reverse confusion."

147. As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and will continue to suffer substantial pecuniary losses and irreparable injury. As such, a remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to temporary, preliminary and permanent injunctive relief.

148. As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial, but not less than the jurisdictional minimum of this Court.

## SEVENTH CAUSE OF ACTION

### Deceptive Trade Practices under California Law

### (Cal. Bus. & Prof. Code §§ 17500 et seq.)

149. Plaintiff re-alleges each and every allegation set out above in this Complaint.

150. Defendants' acts, as set forth herein, constitute deceptive trade practices under Cal. Bus. & Prof. Code §§17500 et seq., all to the damage of Plaintiff as previously alleged.

## EIGHTH CAUSE OF ACTION

### (State False Advertising)

### (Cal. Bus. & Prof. Code §§ 17500 et seq.)

151. Plaintiff re-alleges each and every allegation set out above in this Complaint.

COMPLAINT FOR DAMAGES

152. Defendants' wrongful acts as described herein and publicly disseminated constitute false or misleading advertising which Defendants knew, or should have known, to be untrue or misleading in violation of Section 17500 et seq. of the California Business and Professions Code and California common law.

153. As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and will continue to suffer substantial pecuniary losses and irreparable injury. As such, a remedy at law is not adequate to compensate for injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to temporary, preliminary and permanent injunctive relief.

154. As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial, but not less than the jurisdictional minimum of this Court.

### NINTH CAUSE OF ACTION

Federal Trademark Infringement

(Lanham Act Violations - 15 U.S.C. §1051 et seq.)

155. Plaintiff re-alleges each and every allegation set out above in this Complaint.

156. Plaintiff owns the Sensible Foods' Registrations for the SENSIBLE FOODS MARKS and its common law marks SNACKING HAS NEVER BEEN MORE SENSIBLE and SNACKING HAS NEVER BEEN SO SENSIBLE.

157. Plaintiffs' Marks are distinctive and have been used in commerce worldwide.

158. Defendants' actions are likely to cause confusion, reverse confusion, and or mistake and to deceive potential customers and the general purchasing public as to the source, origin and/or sponsorship of Defendants' products marketed under the Infringing Works, and are likely to

deceive the public into believing that such products are made, provided, authorized, endorsed or sponsored by Plaintiff, thereby damaging Plaintiffs reputation, goodwill, and sales.

159. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable injury.

160. The aforementioned wrongful acts of Defendants constituted intentional wrongful conduct with the intention on the part of Defendants of thereby depriving Plaintiff of property, legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to cruel and unjust hardship and conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

TENTH CAUSE OF ACTION

Reverse Confusion

(Lanham Act 15 U.S.C. §1114 et. seq.)

161. Plaintiff re-alleges each and every allegation set out above in this Complaint.

162. Defendants used and still use the Infringing Works without the consent of the Plaintiff in a manner that has caused confusion, mistake and deception and is likely to cause confusion, mistake or to deceive ordinary purchasers as to the source of the goods.

163. Defendants' actions have led and are likely to lead the public to conclude, incorrectly, that Plaintiff's goods originate from Defendants, which will damage both Plaintiff and the public.

164. Defendants' unauthorized use of the Infringing Works and Infringing Products in U.S. interstate commerce as described above constitutes reverse-confusion trademark infringement under 15 U.S.C. § 1114(1) and is likely to cause consumer confusion, mistake, or deception.

165. As a direct and proximate result of Defendant's reverse-confusion trademark infringement, Plaintiff has suffered and will continue to suffer loss of income, profits and good will and Defendants have and will continue to unfairly acquire income, profits and good will.

166. Defendants' acts of reverse-confusion trademark infringement will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

## ELEVENTH CAUSE OF ACTION

### (Cancellation of Federal Trademark Registration)

### COUNT I

### (Fraud on the Trademark Office)

167. Plaintiff re-alleges each and every allegation set out above in this Complaint.

168. This claim for cancellation is brought pursuant to the Lanham Act, 15 U.S.C. §§1064 (3), 1119.

169. Plaintiff is informed and believes and based upon such information and belief alleges that the Defendants' statements to the PTO were false at the time the were made, the statements were material to the issuance of SP Reg. No. '083, and Defendants intended to mislead the PTO.

### COUNT II

### (Lack of Distinctiveness)

170. Plaintiff re-alleges each and every allegation set out above in this Complaint.

171. This claim for cancellation is brought pursuant to the Lanham Act, 15, U.S.C. §§1064 (1), 1119.

172. Defendants SENSIBLE PORTIONS mark is descriptive and lacked acquired distinctiveness at the time SP Reg. No. '083 issued.

COMPLAINT FOR DAMAGES

173. Defendant lacked sufficient exclusivity, manner and length of use of the mark, amount and manner of advertising, amount of sales and number of customers prior to issuance of Defendant's registrations to permit its marks to create in the minds of consumers the impression that Defendants' marks denote a single thing coming from a single source.

174. Accordingly, Defendants' SENSIBLE PORTIONS mark was ineligible for registration pursuant to 15 U.S.C. § 1052(e) and its SENSIBLE PORTIONS and design mark was ineligible for registration without a disclaimer of the descriptive wording "SENSIBLE PORTIONS" apart from the mark as shown, 15 U.S.C. § 1056(a).

175. Defendants' Registration No. 3,195,083 is therefore invalid and unenforceable, and Plaintiff is entitled to a judgment canceling the Registration.

## COUNT III

### (Defendants' Mark is Generic)

176. Plaintiff re-alleges each and every allegation set out above in this Complaint.

177. This claim for cancellation is brought pursuant to the Lanham Act, 15, U.S.C. §§1064 (3), 1119.

178. Defendants' purported mark contains or consists of a generic term or defines a quality or characteristic of the products as used in the United States in connection with the Infringing Products because the term "sensible portion" is merely a description of a generic terms well-known in the consumer packaged goods industry; namely, "a portion with 100 calories." On information and belief, all of Defendants' Infringing Products with the term "sensible portions" contain the text and design elements pointing to text that reads "this is sensible, this is your portion 38 straws" or as in the SOU "Only 100 calories per pack." The term "sensible portions"

is perceived by the relevant consuming public to mean a product that contains 100 calories or less.

179. As a generic term or quality or characteristic of the products, except for any stylized elements, Defendants' mark and registration enumerated above is unenforceable and invalid, and therefore subject to cancellation under 15 U.S.C. §§ 1064.

180. Defendants' Registration No. 3,195,083 is therefore invalid and unenforceable, and Plaintiff is entitled to a judgment canceling the Registration.

TWELFTH CAUSE OF ACTION

Cyberpiracy

(Lanham Act Violations - 15 U.S.C. §1025 (d) et. seq.)

181. Plaintiff re-alleges each and every allegation set out above in this Complaint.

182. Defendants registered, traffic in, or use one or more domain names that are identical or confusingly-similar to SENSIBLE FOODS MARKS.

183. Defendants have, or had, a bad-faith intent to profit from SENSIBLE FOODS' MARKS.

184. The SENSIBLE FOODS' MARKS are distinctive and have been used in commerce.

185. The aforementioned wrongful acts of Defendants constituted intentional wrongful conduct with the intention on the part of Defendants to deprive Plaintiff of property, legal rights or otherwise causing injury and such conduct was despicable and subjected Plaintiff to cruel and unjust hardship and conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

186. Defendants used and continue to use the Defendants' Domain Names and WebSites coupled with their products, advertisements and communications to divert consumers from the Plaintiff's

**COMPLAINT FOR DAMAGES**

online location to a site accessible under the Defendants' Domain Names or other third party

providers that could harm the goodwill and value represented in the SENSIBLE FOODS

MARKS for commercial gain or with the intent to tarnish or disparage by creating a likelihood

of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendant's Web

Site.

THIRTEENTH CAUSE OF ACTION

False Advertising, Misrepresentation, & Unfair Competition

(Lanham Act Violations - 15 U.S.C. §1125 (a) et seq.)

187. Plaintiff re-alleges each and every allegation set out above in this Complaint.

188. Defendants made misrepresentations in commercial advertising or promotion concerning goods,

services, or commercial activities.

189. Defendants' false advertising actually deceived or intended to deceive their recipients and the

public.

190. Defendants' false advertising is likely to influence the purchasing decisions of their recipients

and the public.

191. Defendants' misrepresentations and false advertising are in direct competition with Plaintiff.

192. Defendants are attempting to "palm off" their goods and services as those of Plaintiff's, and they

are attempting to misrepresent Plaintiff's goods and services as those of Defendants'.

193. Defendants' unlawful actions alleged herein were made in commerce.

194. Defendants' unlawful actions injured, or are likely to injure, Plaintiffs in an amount exceeding

the minimum jurisdictional requirements of this Court.

195.  As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable injury.

196. The Defendants' unlawful actions were willful, wanton, and malicious and were undertaken with the intent to injure Plaintiffs and further with a knowing and intentional disregard for Plaintiff's legal rights and with intention of depriving Plaintiff of property, legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiffs to cruel and unjust hardship so as to justify and award of exemplary and punitive damages.

## FOURTEENTH CAUSE OF ACTION

### (State Cyberpiracy)

### (Cal. Bus. & Prof. Code §§ 17525 et seq.)

197. Plaintiff re-alleges each and every allegation set out above in this Complaint.

198. As a proximate result thereof, Plaintiffs have been damaged in an amount to be proven at trial, but not less than the jurisdictional minimum of this Court.

## FIFTEENTH CAUSE OF ACTION

### (Trademark Infringement- Common Law)

199. Plaintiff re-alleges each and every allegation set out above in this Complaint.

200. Plaintiff has valid and protectable common law rights in the SENSIBLE FOODS MARKS. Plaintiff started to use this mark well prior to Defendant's first use of the Infringing Works.

201. The acts of Defendant described above constitute infringement of Plaintiff's common law rights in the SENSIBLE FOODS MARKS

202. Defendants' use of the Infringing Works is likely to cause confusion as to the origin of Defendants' products and is likely to cause others to believe that there is a relationship between Defendant and Plaintiff, particularly as Defendant is marketing its Infringing Works and Infringing Products in the same fashion that Plaintiff markets its products, with references to "sensible snacking."

203. Defendants' infringing acts will permit Defendant to capitalize on the strength of Plaintiff's success, goodwill, and reputation in promoting its own products.

204. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff will be deprived of the value of, among other things, its common law SENSIBLE FOODS MARKS as an asset.

205. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been damaged by Defendants' wrongful acts, and such damage will continue unless the Court enjoins Defendants' acts. Plaintiff has no adequate remedy at law for Defendants' continuing violation of the SENSIBLE FOODS MARKS.

SIXTEENTH CAUSE OF ACTION

(Unjust Enrichment)

206.  Plaintiff re-alleges each and every allegation set out above in this Complaint.

207. As a result of the conduct alleged herein, Defendants have been unjustly enriched to Sensible Foods' detriment.   Sensible Foods seeks an accounting and disgorgement of all ill gotten gains and profits resulting from Defendants' inequitable activities and be enjoined from further unjust enrichment.

208. As a result, Plaintiff has been damaged in an amount to be ascertained at trial. The exact sums unjustly received by Defendants are unknown at this time, but Plaintiff believes such economic benefits are substantial.

209. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been damaged by Defendants' wrongful acts, and such damage will continue unless the Court enjoins Defendants' acts. Plaintiff has no adequate remedy at law for Defendants' continuing violation of the SENSIBLE FOODS MARKS.

**WHEREFORE**, Plaintiff prays that this Court enter judgment for Plaintiff on each of its claims as follows:

1. Directing that Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them, be immediately and permanently enjoined pursuant to 15 U.S.C §1116 from:

a. infringing the SENSIBLE FOODS' MARKS;

b. falsely designating the origin, sponsorship, or affiliation of their business, goods, or services;

c. using, on or in connection with the promotion, advertisement, marketing, sales, offering for sale, distribution of any goods and services relating to the SENSIBLE PORTION Mark, the SENSIBLE SNACKS term, SNACK SENSIBLY, SNACKING HAS NEVER BEEN MORE SENSIBLE, SNACKING HAS NEVER BEEN SO SENSIBLE or any derivation or colorable imitation of the SENSIBLE FOODS MARKS, or any name or mark that is confusingly similar to the SENSIBLE FOODS MARKS (collectively, the "Prohibited Marks"), on or in connection with Defendants' goods or services;

d. making further attempts to register the SENSIBLE PORTIONS Marks or any derivation or colorable imitation of the SENSIBLE FOODS MARKS, or any name or mark that is confusingly similar to the SENSIBLE FOODS MARKS, including but not limited to the Prohibited Marks;

e. making or employing any other commercial use of any of the Prohibited Marks;

f. making or displaying any statement or representation that is likely to lead the public or the trade to believe that Defendant's goods or services are in any manner associated or affiliated

COMPLAINT FOR DAMAGES

with or made, approved, endorsed, licensed, sponsored, authorized, or franchised by or are otherwise connected with Sensible Foods;

g. using any other false designation of origin or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant's products or activities are in any way made, sponsored, licensed, endorsed, or authorized by, or affiliated or connected with Plaintiff, or originate from Plaintiff;

h. doing any other acts or things calculated or likely to cause confusion, mistake, or deception in the mind of the public and trade or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendant emanate from or originate with Plaintiff or its licensees, or are somehow sponsored, licensed, endorsed, or authorized by, or affiliated or connected with Plaintiff, or originate from Plaintiff;

i. engaging in any other activity constituting unfair competition with Sensible Foods;

j. further diluting and/or infringing Plaintiff's SENSIBLE FOODS MARKS and damaging Plaintiff's goodwill;

k. using or registering any of the Prohibited Marks as part of any domain name, regardless of country-code TLD or generic TLD;

l. purchasing any of the Prohibited Marks in connection with any sponsored advertising on the Internet or using any of the Prohibited Marks in any source code or otherwise using the Prohibited Marks such that a search for Plaintiff on the Internet will cause any domain name or website of Defendant to appear in search results; and

m. aiding, assisting, or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (m) above.

2. Under 15, U.S.C. §1119, declaring that Defendant has no right to the registration applied for in WGM App. No. '051 which gave rise to SP Reg. No. 3,195,083, and certifying the Court's order to the Director of the Patent and Trademark Office for cancellation of the SENSIBLE PORTIONS mark.

3. Directing that Defendant be required to voluntarily and expressly abandon or cause to be voluntarily and expressly abandoned, with prejudice, all applications to register the Prohibited Marks, including Registration No. 3,195,083 pursuant to 37 C.F.R. §2.68.

4. Directing that Defendant deliver up to Sensible Foods for destruction all products, labels, signs, stationery, prints, packages, promotional and marketing materials, advertisements, and other

materials (a) currently in its possession or under its control or (b) recalled by Defendant pursuant to any order of the Court or otherwise, incorporating, featuring, or bearing the Prohibited Marks or any other simulation, reproduction, copy, or colorable imitation thereof.

5. Directing that Defendant file with the Court and serve upon Sensible Foods' within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

6. Awarding Sensible Foods such damages, including lost profits and Defendants' unjust enrichment, in an amount to be determined at trial but in excess of the jurisdictional amount of this Court it has sustained or will sustain by reason of Defendants' acts of trademark infringement and unfair competition and that such sums be trebled pursuant to 15 U.S.C. §1117 and California Civil Code §3294.

7. Awarding Sensible Foods restitution, including Defendant's profits, under Cal. Bus. & Prof. Code §§17200 et seq.

8. Awarding Sensible Foods all other recoverable gains, profits, property, and advantages derived by Defendant from its unlawful conduct.

9. Awarding to Sensible Foods exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

10. Awarding to Sensible Foods its costs and disbursements incurred in this action, including the equivalent of reasonable attorneys' fees pursuant to 15 U.S.C. 1117 (a), Cal. Bus. & Prof. Code §§ 17200 et seq. , 17500 et. seq. , and under any other California law.

11. An Award of Plaintiff's reasonable expenses, including attorney's fees and costs of this action, as permitted by law and Cal. Civ. Code Section 3426.

12. Awarding Sensible Foods interest, including pre-judgment interest on the foregoing sums.

13. Awarding to Sensible Foods such other and further relief as the Court may deem just and proper.

Respectfully submitted,

June 9, 2011                    Frederick M. Rarick, Esq.

                               Attorney for Plaintiff

- 48 -                                          COMPLAINT FOR DAMAGES

1

2

3       Pursuant to Rule [38(a) of the Fed. R. Civ. Pro], Plaintiff demands a Jury Trial.

4

5  June 01, 2011                          Frederick M. Rarick, Esq.

6

7                                         Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES